UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

ROGER EARL WALTON,

      Defendant.

Case No. 3:20-cr-82-1

District Judge Michael J. Newman

---

**ORDER: (1) DENYING DEFENDANT'S *PRO SE* MOTION AND AMENDED MOTION FOR COMPASSIONATE RELEASE (Doc. Nos. 384, 385); AND (2) CONFIRMING THIS CASE REMAINS TERMINATED ON THE COURT'S DOCKET**

---

This is a criminal case in which Defendant previously pled guilty to conspiracy to possess with intent to distribute a mixture or substance containing cocaine. Doc. Nos. 256, 263. The Court sentenced him to a 168-month term of imprisonment, which was consistent with the parties' plea agreement and within the sentencing range recommended by the United States Sentencing Guidelines.[1] Doc. No. 256, 342. He is currently incarcerated at the Federal Correctional Institution in Bennettsville, South Carolina. *See* https://www.bop.gov//inmateloc (last visited Apr. 13, 2026).

The case is before the Court on Defendant's *pro se* motion and amended motion for compassionate release (Doc. Nos. 384, 385), the Government's memorandum in opposition (Doc. No. 390), and Defendant's reply (Doc. No. 393).[2]

---

[1] The recommended sentencing range under the Guidelines was 135 to 168 months. Doc. No. 327 at PageID 3280; Doc. No. 380 at PageID 4049-52.

[2] The Court liberally construes Defendant's *pro se* filings in his favor. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007).

**I**.

Federal law generally prohibits a district court from "modifying a term of imprisonment once it has been imposed." *United States v. Ruffin*, 978 F.3d 1000, 1003 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(a)(1)(A)) (citation modified).  Despite this, a defendant may file, on his own behalf, a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  *See United States v. Alam,* 960 F.3d 831, 834-35 (6th Cir. 2020).  A defendant may bring a compassionate release motion only after fully exhausting his right to administrative relief with the Bureau of Prisons or by waiting 30 days after submitting a request for release to the warden of his facility.  *See United States v. Harvey*, No. 23-5068, 2023 WL 5275091, at *2 (6th Cir. July 10, 2023); *United States v. Walton*, No. 2:18-cr-204-18, 2022 WL 950351, at *1 (S.D. Ohio Mar. 30, 2022).  The defendant bears the burden of showing he has exhausted his administrative remedies and is entitled to compassionate release.  *United States v. Poole*, 472 F. Supp.3d 450, 455 (W.D. Tenn. 2020).

Defendant contends he fully exhausted his administrative remedies by submitting an exhaustion letter to the warden and, after waiting thirty days without a response, filing his motion in this case.  Doc. No. 384 at PageID 4161.  The letter on which he relies states,

> I, Roger Walton…, am officially giving constructive notice of my intended defendant [sic] filed motion for Compassionate release, codified in 18 U. S. C. § 3582(c)(1)(A), for family circumstances. If not answered within 30 days this shall satisfy my exhaustion requirement.

*Id*. at PageID 4185 (Exh. 1).  He emphasizes his letter clearly states his intent to file a motion for compassionate release.  *Id*. at PageID 4185 (Exh. 1); Doc. No. 393 at PageID 4510.

The Government contends Defendant's unsigned, perfunctory letter to the warden of FCI Bennettsville, which does not ask the warden to file a motion for compassionate release on his behalf, failed to fully exhaust his administrative remedies.  Doc. No. 390 at PageID 4491-92.  The

2

Government points out that Defendant's letter contains no facts upon which his motion for compassionate release is based.  Doc. No. 390 at PageID 4491-92.

Accepting as true Defendant's assertion he sent his letter to the warden, the letter does not meet his burden to show he fully exhausted his administrative remedies because it offers no reasons why compassionate release should be granted.  Without this information, Defendant did not provide the warden "with the information necessary to move for release on [his] behalf."  *United States* v. *Williams*, 987 F.3d 700, 703 (7th Cir. 2021); *see United States v. Phillips*, No. 1:12-cr-49-2, 2024 WL 1931046, at *2 (S.D. Ohio May 1, 2024) ("[T]he [§ 3582(c)(1)(A)] exhaustion requirement is meant 'to implement an orderly system for reviewing compassionate-release applications, not one that incentivizes line jumping.'" (quoting *United States v. Wardle*, No. 5:18-57-KKC, 2021 WL 4822827, at *2 (E.D. Ky. Oct. 14, 2021))).  Further, the Sixth Circuit "stresses that review by the BOP is not futile and that preventing prisoners from charging straight to federal court serves important purposes.  Requiring that prisoners first present their arguments in a request to the warden ensures that the prison administrators can prioritize the most urgent claims and 'that they can investigate the gravity of the conditions supporting compassionate release and the likelihood that the conditions will persist.'"  *Id*. (quoting *Alam*, 960 F.3d 831 at 835) (citation modified).

Accordingly, Defendant failed to fully exhaust his administrative remedies and, consequently, is not entitled to compassionate release under § 3582(c)(1)(A).  Assuming, *arguendo*, Defendant fully exhausted his administrative remedies, his motion for compassionate relief lacks merit as discussed next.

**II.**

### A. Compassionate Release Under Section 3582(c)(1)(A)

"To qualify for compassionate release, a defendant must show that 'extraordinary and compelling reasons warrant such a reduction,' and the district court must consider the § 3553(a) sentencing factors to the extent they are applicable."[3] *United States v. Bass*, 17 F. 4th 629, 635 (6th Cir. 2021) (first quoting 18 U.S.C. § 3582(c)(1)(A); and then *citing Ruffin*, 978 F.3d at 1004).  Even if a defendant shows extraordinary and compelling reasons, "a district court may still deny relief if it finds that the 'applicable' § 3553(a) factors do not justify it." *Ruffin*, 978 F.3d at 1005.  Further, "[e]ven when all [§ 3582(c)(1)(A)'s] conditions are met, the district court maintains discretion to grant or deny compassionate release." *United States v. Neidik*, No. 2:23-cr-00217, 2026 WL 775560, at *1 (S.D. Ohio Mar. 19, 2026)  (citing *United States v. Jones*, 980 F.3d 1098, 1101–02, 1106 (6th Cir. 2020)).

### B. Extraordinary and Compelling Reasons

**1.**

Defendant contends that certain caretaking problems resulting from his son's medical condition, combined with his wife's worsening medical condition, constitute extraordinary and compelling reasons to grant him compassionate release.  Doc. No. 385 at PageID 4238-40.  His son has autism.  Doc. No. 385 at PageID 4238.  Defendant's wife—his son's sole, responsible caretaker— "suffers from several debilitating illnesses including epilepsy, intracranial aneurysm, has a history of cerebrovascular accidents, and circulatory issues[.]" *Id.*  Defendant explains that his wife "has routinely been hospitalized for seizures and other circulatory issues for days at a time leaving [his

---

[3] A third requirement—"that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"—does not apply if an inmate, rather than the BOP, files the compassionate release motion. *United States v. Owens*, 996 F.3d 755, 759 n.2 (6th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). Defendant filed the instant motions, so this requirement does not apply. *See id.*

4

son] in really difficult situations." *Id*.  His son's medical problems often require multiple medical appointments per week, according to Defendant.  *Id*. at PageID 4239.  He asserts that because his wife's medical conditions have deteriorated, he is the only one who can care for his son.  *Id*. at PageID 4239-40.

The Court acknowledges at the outset that this is a very difficult and complicated medical situation, and the Court is sympathetic to Defendant's desire to take care of his son.  Nonetheless, Defendant's contentions and evidence do not alter the Court's prior conclusion that his wife and son have the support of friends and family.  Doc. No. 319 at PageID 3199-3200.  While Defendant asserts there are no other caregivers available for his wife or his son, he does not address the testimony at the PSR objection hearing, or present contrary evidence, showing his son's "relatives, typically her other children, help care for [her son]." *See id*.  at PageID 3198; *see United States v. Hunter*, 12 F.4th 555, 570 (6th Cir. 2021) ("[F]acts that existed at sentencing cannot later be construed as 'extraordinary and compelling reasons' to reduce a final sentence").  Consequently, Defendant has not shown that he is the only alternative caregiver for his wife and son.

Defendant also relies on police incident reports documenting three car accidents in 2021, 2023, and 2025, but these reports do not indicate anything significant about his wife's medical condition at the time of these accidents and, consequently, fall short of showing his wife is completely unable to care for their son.  *See id.* at PageID 4269-74.

Defendant further relies on various documents related to his son's medical care and educational programs, but these documents do not provide significant probative information beyond what was previously presented to the Court during Defendant's sentencing proceedings.  *See id*. at PageID 4276-80, 4284, 4300.

In sum—although the Court is quite sympathetic to the unique medical facts at issue here,

5

along with the family care concerns—Defendant's evidence falls short of showing his son's need for frequent and significant medical care and educational programs, combined with his wife's medical conditions, amount to "extraordinary and compelling" circumstances warranting compassionate release. *See United States v. Knuckles*, 614 F. Supp. 3d 534, 536 (E.D. Mich. 2021) (denying release where defendant's fiancée was incapacitated and no other caregiver was available and holding that difficult family circumstances "do not constitute an extraordinary and compelling reason" for sentence reduction); *see also United States Lawrence*, 609 F. Supp. 3d 544, 549 (E.D. Mich. 2022) (holding that difficulties in caring for children and loss of a caregiver are not extraordinary circumstances).

**2.**

Next, Defendant focuses on the steps he has taken towards rehabilitation during his incarceration, including earning a GED and certain certifications, maintaining a prison record free of disciplinary problems and with a "perfect employment history," and mentoring others. Doc. No. 385 at PageID 4247. Although Defendant's steps toward rehabilitation during his incarceration are praiseworthy, they are also consistent with what is generally expected of all inmates who seek to successfully reintegrate into society upon completion of their prison terms. Additionally, "[r]ehabilitation alone cannot constitute an extraordinary and compelling reason for release." *United States v. Evans*, No. 2:18-cr-20826-2, 2026 WL 948633, at *2 (E.D. Mich., Apr. 8, 2026) (citing 28 U.S.C. § 994(t)).

Defendant's additional assertions do not establish extraordinary and compelling circumstances. First, he maintains he suffered harsh pretrial confinement as a result of the COVID pandemic, but this fact existed at the time of his sentencing and thus does not constitute an extraordinary and compelling reason warranting a subsequent sentence reduction. *See Hunter*, 12

6

F.4th 555, 570 (6th Cir. 2021) ("[F]acts that existed at sentencing cannot later be construed as 'extraordinary and compelling reasons' to reduce a final sentence"); *cf. United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022) ("[R]isk of complications from COVID-19 infection, conditions of incarceration, and good behavior while in prison … [do not] meet[] the 'extraordinary and compelling' mark needed to justify a sentence reduction").

Second, Defendant points to the fact he was given more prison time than one of his co-defendants, and he contends he purportedly received a sentence greater than the national average for his level of culpability. Doc. No. 385 at PageID 4243. Instead of being an extraordinary and compelling reason, this contention is merely a reasonableness objection to his sentence that he did not raise at the time of its initial imposition. He similarly contends he was placed in the wrong criminal history category due to a prior marijuana conviction, *id*.; but, again, this is a sentencing objection grounded in facts that existed at the time of his initial sentencing hearing rather than an extraordinary and compelling reason for him now to be granted compassionate release. *See Hunter*, 12 F.4th at 570.

Accordingly, for the above reasons, Defendant has not shown the existence of extraordinary and compelling circumstances in support of his motion for compassionate release.

### C. The § 3553(a) Factors

Assuming, *arguendo*, Defendant has shown extraordinary and compelling circumstances, he must identify the factors under 18 U.S.C. § 3553(a) that warrant his compassionate release. Indeed, he "bears the burden of … persuading the court that the section 3553(a) factors weigh in favor of granting the motion." *Neidik*, 2026 WL 775560, at *1 (citing *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (en banc)).

The § 3553(a) factors include, *inter alia*, "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed -- to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; [and] to protect the public from further crimes of the defendant...." 18 U.S.C. §§ 3553(a)(1), (2)(A)-(C). The Court "has substantial discretion" to weigh the § 3553(a) factors when contemplating a motion for compassionate release. *Ruffin*, 978 F.3d at 1005.

Defendant contends all the § 3553(a) factors favor granting him compassionate release, and he generally relies on all the circumstances he raises in his motion for compassionate release to support his § 3553(a) contentions. Doc. No. 385 at PageID 4255. He emphasizes he is not a violent person and "has no violence anywhere in his record or in prison at any time. In fact the BOP has placed [me] in [out] custody meaning he is at a minimum with no fence and able to travel in the community." *Id*.

Defendant's contentions do not alter the Court's prior weighing of the § 3553(a) factors when imposing his sentence. There exists a strong need to maintain Defendant's sentence at 168 months "to reflect the seriousness of [his] offense, to promote respect for the rule of law, and to provide just punishment," as well as to ensure "adequate deterrence to criminal conduct." §§ 3553(a)(2)(A), (B). In the stipulation of facts attached to Defendant's plea agreement, he admitted he was the organizer and supervisor of a multi-state drug trafficking organization that "acquired bulk amounts of narcotics from suppliers in the greater Los Angeles, California and Houston, Texas areas. [He] arranged for the purchase and transport of narcotics to Charlotte, North Carolina and Dayton, Ohio where they were sold for the profit of their drug trafficking organization. The organization collected hundreds of thousands of dollars in U.S. currency from the sale of narcotics, which were then laundered through

8

various businesses[.]  In sum, [Defendant] is responsible for distributing narcotics that amount to at least 3,000 kg but less than 10,000 kg of converted drug weight."  Doc. No. 256 at PageID 2557.

Given these uncontroverted facts, *id*., and the additional uncontroverted facts discussed in the probation officer's second addendum to the Presentence Investigation Report, *see* Doc. No. 327; Doc. No. 380 at PageID 4051-52, the sentencing factors of general and specific deterrence weigh heavily against compassionate release.  Reducing Defendant's sentence, or providing him with compassionate release, would tend to send the wrong message to Defendant and the community: that even prolific drug-trafficking activities might ultimately result in a relatively minimal prison term, provided that the narcotics trafficker seeks a reduction in the months following the imposition of his initial punishment.  Further, granting Defendant's motion for compassionate release would create an undesirable incentive by implying—if not encouraging—prospective narcotics traffickers with vulnerable relatives to proceed with their criminal plans, knowing they might later benefit from the harm their absence (while incarcerated) might cause their families.  Moreover, although the particular circumstances Defendant's family faces are truly unfortunate, the Court fully considered those same difficult circumstances when imposing Defendant's sentence to a 168-month term of imprisonment.  In its present consideration of the § 3553(a) factors, the Court has reconsidered those family circumstances along with all the evidence and arguments Defendant raises.  Doing so, the Court concludes that Defendant's 168-month sentence remains necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from any future crimes committed by Defendant, and provide him with needed and ongoing educational or vocational training, medical care, and all other correctional treatment in the most effective manner.  *See* § 3553(a)(2).  In conclusion,

Defendant's 168-month sentence is sufficient, but not greater than necessary, to comply with the purposes the sentencing set forth in § 3553(a)(2).

**III.**

Accordingly, Defendant's two motions for compassionate release are **BOTH DENIED**.

**IT IS SO ORDERED.**

April 23, 2026                                         s/*Michael J. Newman*
                                                      Hon. Michael J. Newman
                                                      United States District Judge

10